# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| PERSIDA MYERS, <br> *Plaintiff* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) <br> ) <br> ) |
| UNITED STATES OF AMERICA, <br> *Defendant.* | ) <br> ) <br> ) |

Civil Action No.

Case: 1:26–cv–01215
Assigned To : Kelly, Timothy J.
Assign. Date : 3/23/2026
Description: Pro Se Gen. Civ. (F–DECK)

**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**

**COMES NOW** Plaintiff Persida Myers (**"Plaintiff"**), acting pro se, and brings this action for money damages against Defendant United States of America pursuant to the Federal Tort Claims Act (**"FTCA"**), 28 U.S.C. §§ 1346(b), 2671–2680, for the negligent and unlawful conduct of employees of the United States Department of Housing and Urban Development (**"HUD"**) in their handling of Plaintiff's Fair Housing Act Complaint (HUD File No. 10-19-1175-8) against Sunriver Owners Association "SOA", over a period of more than six years.

1

RECEIVED

MAR 23 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## THE PARTIES

**1**. Plaintiff Persida Myers co-owns commercial property at 18135 Cottonwood Road, Sunriver, Oregon 97707 ("Property"), which is the property at issue in the underlying FHA complaint and the primary source of Plaintiff's damages.

**2**. Defendant United States of America is the proper defendant in FTCA actions. 28 U.S.C. § 2679(a). The tortious acts and omissions complained of herein were committed by employees of HUD acting within the scope of their employment. The United States has waived sovereign immunity for such conduct under 28 U.S.C. § 1346(b).

## JURISDICTION AND VENUE

**3**. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b)(1), which grants district courts exclusive original jurisdiction over civil actions against the United States for money damages for injury or loss of property, or personal injury, caused by the negligent or wrongful act or omission of any government employee acting within the scope of employment.

**4**. **Administrative Exhaustion.** Plaintiff has fully exhausted administrative remedies as required by 28 U.S.C. § 2675(a). On September 4, 2025, Plaintiff filed Standard Form 95 with HUD's Office of General Counsel, Tort Claims Unit, 451 Seventh Street S.W., Washington, DC 20410, presenting a claim of $6,536,642 in Plaintiff's individual damages arising from HUD's negligent handling of FHA File No. 10-19-1175-8. HUD failed to make a final disposition within six months of that presentment. Accordingly, by operation of law, the claim is deemed denied as of March 4, 2026. 28 U.S.C. § 2675(a). This action is timely filed within six months of that

deemed denial. 28 U.S.C. § 2401(b). A true and correct copy of the Form 95 and 13-page Basis of Claim are attached hereto as Exhibit 1, and Exhibit 2 (with Exhibits A-L).[1]

 **5**. **Timeliness of Administrative Claim — Three Independent Accrual Theories.**

 The administrative claim filed September 4, 2025 is timely under three independent and alternative theories, each sufficient standing alone to place the claim within the two-year period prescribed by 28 U.S.C. § 2401(b).

 **6**. **Continuing Tort Doctrine.** HUD's breach of its mandatory investigative and notification duties was not a single completed act. It was a recurring, ongoing course of negligent conduct. The FHA imposes on HUD a non-discretionary notification obligation at each successive 100-day interval during which the investigation remains incomplete. 42 U.S.C. § 3610(a)(1)(C); 24 C.F.R. § 103.225. Each interval that passed without written notification constituted an independent, freestanding breach of that mandatory duty. Across more than 2,290 days — representing more than 22 discrete notification intervals — HUD committed 22 or more independent acts of breach. The most recent occurred on March 5, 2025, when HUD attorney Palmer Heenan notified Plaintiff that HUD had "been directed that we cannot have communication outside of HUD for the moment," terminating the complaint process without determination and without written justification. That final breach occurred within six months of the SF-95 filing. Under the continuing tort doctrine, the limitations period runs from the last overt act in the continuing course of conduct. *See Loumiet v. United States,* 828 F.3d 935, 940 (D.C. Cir. 2016) (continuing-violations doctrine extends limitations period where plaintiff

---

[1] Benjamin Clapa is identified as a co-claimant on the Standard Form 95 filed September 4, 2025, solely in his capacity as co-owner of the subject property at 18135 Cottonwood Road, Sunriver, Oregon 97707. This Complaint is brought by Plaintiff Persida Myers in her individual capacity and asserts only her individual damages. Mr. Clapa does not join as a plaintiff herein. All damages claimed herein are Plaintiff's own and do not include any claim on behalf of Mr. Clapa.

alleges "continuing conduct causing cumulative harm"). Each successive 100-day interval of non-notification and the March 5, 2025 communication cutoff each independently constitute a new accrual date within the limitations period.

7. **Discovery Rule and Equitable Tolling.** In the alternative, Plaintiff's claim did not fully accrue, and the limitations period did not begin to run, until Plaintiff discovered or reasonably should have discovered that HUD had definitively abandoned its mandatory duty to complete the investigation and issue a determination. *United States v. Kubrick,* 444 U.S. 111, 122 (1979) (FTCA claim accrues when plaintiff discovers both the existence of the injury and its cause). Until HUD attorney Palmer Heenan's March 5, 2025 email, Plaintiff had no reason to know that HUD had permanently abandoned the proceeding rather than merely delayed it. HUD's conduct throughout — the 2021 letter of abeyance, the January 2024 Zoom conference attended by six HUD attorneys and officials, and HUD's continuous representations that the investigation remained active — was objectively calculated to conceal the abandonment and induce continued reliance. Plaintiff could not have discovered that HUD had institutionally terminated the proceeding rather than continued to process it until the March 5, 2025, communication cutoff — which itself occurred within six months of the SF-95 filing.

8. Further, to the extent any earlier accrual date is found, equitable tolling applies. The Supreme Court has held that both limitations periods in 28 U.S.C. § 2401(b) — the two-year period for presentment and the six-month period for suit — are non-jurisdictional claim-processing rules subject to equitable tolling. *United States v. Kwai Fun Wong,* 575 U.S. 402, 412–14 (2015). Equitable tolling is available where a plaintiff "has been pursuing [her] rights diligently" and "some extraordinary circumstance stood in [her] way." *Id*. Both conditions are met here. Plaintiff made over 100 documented follow-up communications across six years and

4

never allowed the matter to lapse. HUD's continuous representations that the investigation remained active — culminating in a six-attorney Zoom conference in January 2024 and followed by an unexplained institutional communication blackout — constitute the kind of concealment and delay that prevents a plaintiff from knowing she must seek a judicial remedy. *See United States v. Kwai Fun Wong,* 575 U.S. at 415 (government concealment of facts vital to a claim supports equitable tolling of the two-year presentment period).

**9**. Venue is proper in this district pursuant to 28 U.S.C. § 1402(b) because the acts and omissions giving rise to this claim occurred substantially in the District of Columbia, where HUD's principal offices and the employees responsible for handling this complaint are located.

**10**. **Related Case.** A related action, *Myers v. United States Department of Housing and Urban Development*, Civil Action No. 25-3237 (TJK), is currently pending before Judge Timothy J. Kelly in this Court, asserting APA unreasonable delay and mandamus claims arising from the same course of HUD conduct. Plaintiff has filed a Notice of Related Case designating this action as related to 25-3237 pursuant to LCvR 40.5(b).

**11. HUD Personnel**. The following HUD employees were personally involved in the handling, mishandling, or abandonment of Plaintiff's FHA complaint at various stages of the proceeding, as documented in Plaintiff's email records and other communications. All individuals identified below were acting within the scope of their employment with HUD at all relevant times. Their acts and omissions are attributed to Defendant United States of America pursuant to 28 U.S.C. § 2679(a):

(a) James Kordich, Equal Opportunity Specialist and later Branch Chief, HUD FHEO Region X — original investigator and author of the September 30, 2020, Determination of No Reasonable Cause; later reassigned to oversee reconsideration of his own determination.

(b) Barbara Lehman, Director, HUD FHEO Region X;

(c) Erik A. Heins, Director of Enforcement Support, HUD FHEO;

(d) Han Lee, Assistant Regional Administrator, FHEO;

(e) Palmer Heenan, Attorney, Acting Team Lead, Deputy Assistant Secretary for Enforcement; author of the March 5, 2025, communication cutoff email;

(f) Taylor Poe, Trial Attorney, Office of Housing;

(g) Stephon D. Woods, Trial Attorney, HUD;

(h) Sherrie Adams, HUD Staff;

(i) Kristina Miller, Senior Equal Opportunity Specialist — author of the May 26, 2022, mischaracterization of third-party complaint incident dates.

Their acts and omissions are attributed solely to Defendant United States of America pursuant to 28 U.S.C. § 2679(a). The individuals identified in subparagraphs (a) through (i) are named for purposes of factual attribution only; no claim is asserted against any of them in their individual capacities, and nothing in this Complaint should be construed as asserting any such claim. All relief sought herein is against Defendant United States of America exclusively.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Development Plans and FHA Complaint.

**12**. Plaintiff co-owns commercial property at 18135 Cottonwood Road, Sunriver, Oregon 97707. Plaintiff purchased the Property in 2016 with the intention of operating an assisted living facility to serve elderly and disabled residents. On August 21, 2019, Plaintiff filed a Fair Housing Act complaint (HUD File No. 10-19-1175-8) against SOA and its General Manager Hugh Palcic, alleging disability discrimination arising from SOA's denial of Plaintiff's request to convert the Property use from commercial recreational use to a residential assisted living facility for elderly

and disabled tenants. The Property was zoned for "residential facility" under Sunriver UUC Zone, Community Property CN District Zone, subject to 1983 deed restrictions. A true and correct copy of the Housing Discrimination Complaint is attached hereto as Exhibit 2, Ex.A. The complaint alleged violations of 42 U.S.C. § 3604(f)(1) (otherwise making housing unavailable on account of disability) and § 3604(f)(3)(B) (failure to make reasonable accommodation). SOA denied Plaintiff's accommodation requests on July 25, 2018, and October 20, 2018, board meetings, notwithstanding Oregon law (ORS 93.270(3)) expressly voiding any covenant, condition, or restriction that prohibits the use of property by a facility licensed under ORS 443.400–443.455. The Oregon Department of Human Services, Aging and People with Disabilities office, provided a letter of intent to license 91 assisted living facility units at the Property — confirming that Plaintiff's proposed use was facially viable and consistent with state licensure requirements.

13. The Sunriver Owners Association denied Plaintiff's request for a reasonable accommodation to allow the assisted living use. Plaintiff collected over 1,360 signed petitions from a list of 2,000 Sunriver residents provided by SOA. This total fell short of SOA's 75% approval threshold.

**B.  The FHA Complaints and HUD's Statutory Obligations.**

14. On August 21, 2019, Plaintiff filed FHA complaint No. 10-19-1175-8 with HUD against SOA, alleging denial of reasonable accommodation.

15. On March 30, 2020, Plaintiff submitted a third-party discrimination complaint to investigator Kordich asserting violations of 24 C.F.R. § 100.7(a)(1)(iii) and 42 U.S.C. § 3617. The third-party complaint documented a coordinated pattern of intimidation and harassment directed at Plaintiff and her project, including: nationality-based attacks on Plaintiff as a

developer, including a public Facebook comment stating "They don't know what kind of country they migrated to!"; public commentary designed to discourage supporters and prospective future residents, including a post directing readers to "pay close attention to the members of S[R]OA as to who they are, their main residence, if outside of Sunriver and any other affiliations they have"; dismissive and harassing commentary; and a documented in-person confrontation by an SOA property owner who accosted Plaintiff's staff member at the Sunriver Fitness and Aquatics facility, causing the staff member distress, resulting in revocation of that owner's membership. All of the documented incidents occurred in 2019, in direct response to Plaintiff's FHA complaint and public advocacy for the assisted living project. On March 31, 2020, the day after Plaintiff's third-party filing, investigator Kordich characterized Plaintiff's third-party discrimination complaint as "approach to liability." That characterization established from the outset that the third-party complaint would be managed instrumentally rather than resolved — a posture confirmed by what followed. *See* Exhibit B. Investigator Kordich responded on March 31, 2020, characterizing 24 C.F.R. § 100.7(a)(1)(iii) as "not a separate cause of action" but rather "authority to approach liability," and directed Plaintiff to fold the third-party complaint into the existing case. Plaintiff complied with that direction. The final Determination of No Reasonable Cause issued September 30, 2020, made no mention of the third-party discrimination complaint whatsoever. The FHA imposes a mandatory, non-discretionary duty on HUD: HUD *"shall"* complete the investigation and issue a final determination within 100 days of complaint filing unless it is impracticable to do so, in which case HUD *"shall"* notify the complainant and respondent *in writing* of the reasons for the delay. 42 U.S.C. § 3610(a)(1)(B)(iv), (C); 24 C.F.R. § 103.225. HUD never provided any such written notification despite exceeding the deadline by more than 2,290 days.

**C.  HUD's Erroneous Determination and Reopening.**

16. On September 30, 2020 — 400 days after complaint filing and 300 days past the 100-day deadline — HUD issued a Determination of No Reasonable Cause (Exhibit C). The determination contained a material and dispositive factual error: it concluded that SOA receives no federal funding, when in fact SOA receives substantial federal financial assistance, including Healthy Forests Restoration Act ladder fuel grant reimbursements of $173,496 (March 2023), $173,262 (July 2023), and $428,968 in related expenditures; USDA HFRA Project Sunriver authorization as a federal hazardous fuel reduction project; and Medicaid reimbursements of $46,000 for 2018 alone; as reflected in Exhibits G and I. This federal financial assistance is material for two independent reasons. First, and most immediately, it directly contradicts the factual predicate of HUD's Determination of No Reasonable Cause, which rested explicitly on the finding that SOA receives no federal funding — a finding that Plaintiff's documentary evidence refuted on its face. Second, SOA's receipt of federal financial assistance independently establishes coverage under 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act), to the extent applicable, as a separate basis for legal protection that HUD's erroneous determination entirely foreclosed by failing to address. The materiality of this factual error bears directly on causation: a correctly conducted investigation, informed by the evidence of SOA's federal funding, among other reasons such deed restrictions being enforced against Oregon state law ORS 93.270(2) and (3), would have reached a different — and favorable — determination, preserving Plaintiff's full range of FHA enforcement remedies.

17. Plaintiff requested reconsideration on October 8, 2020, see Exhibit D, submitting documentary evidence of SOA's federal funding and raising other substantial errors in the final

9

determination letter. On December 30, 2021, HUD issued a letter of abeyance reopening the complaint for reconsideration, see Exhibit E.

18. HUD then reassigned investigator James Kordich — the same employee who authored the erroneous Determination of No Reasonable Cause — to review his own prior determination. Plaintiff objected to this reassignment to Erik Heins as a violation of basic procedural fairness and HUD's own regulatory obligation to conduct impartial investigations, free from the appearance of conflict, under 24 C.F.R. § 103.215. Erik Heins declined to find that the objection has basis for reassignment. James Kordich conducted the investigation, attempted a few settlement conciliation sessions and reviewed his own erroneous determination.

**D.  HUD's Continued Inaction, Structural Conflict and Communication Blackout.**

19. During the reconsideration proceeding that followed the December 2021 letter of abeyance, Plaintiff raised in writing a conflict-of-interest inquiry: specifically, whether HUD had outsourced any portion of the investigation file to, or otherwise involved, Ball Janik LLP, a law firm with a documented and direct conflict of interest in this matter. Ball Janik had represented Sunriver Resort LP — an entity closely affiliated with the respondent SOA — and had participated in drafting the Sunriver Owners Association's founding governing documents, placing the firm in the position of having a structural stake in the outcome of any fair housing challenge to SOA's governance decisions. The connection between investigator Kordich and Ball Janik is not purely inferential: in February 2020 — while Plaintiff's FHA complaint was actively pending and within weeks of Kordich's March 31, 2020 misdirection of Plaintiff's third-party discrimination complaint — Kordich conducted a fair housing lecture for Ball Janik LLP at the Portland Convention Center that Plaintiff personally attended alongside more than fifty Ball Janik attorneys. This documented professional relationship between the lead investigator and the

respondent's affiliated counsel existed at the very moment Kordich was directing the course of Plaintiff's complaint. Any involvement by Ball Janik, in the subsequent handling of Plaintiff's FHA file would have compromised the impartiality of the investigation that HUD's own regulations required. *See* 24 C.F.R. § 103.215. Plaintiff documented this concern in writing and requested that HUD disclose whether Ball Janik had been retained, consulted, or otherwise involved in the file at any stage of the proceeding. Plaintiff's review of the September 30, 2020, Determination of No Reasonable Cause further revealed textual characteristics that are inconsistent with the writing patterns of HUD investigative staff. Specifically, Plaintiff observed: (a) terminology and phrasing patterns that do not appear in any other HUD-authored document in the six-year record; (b) structural discontinuities within the determination that are inconsistent with a single-author document produced within a unified investigative framework; and (c) analytical gaps — most notably the complete omission of the third-party discrimination complaint and the absence of any engagement with the 1,360 signed petitions — that are consistent with authorship by a party with an interest in limiting the scope of the findings rather than an investigator with a duty to address all evidence in the record. These textual characteristics are pleaded as additional circumstantial indicators of outside counsel involvement, on information and belief, pending disclosure of determination drafts, authorship metadata, and communications between HUD and Ball Janik LLP, or a third party, which are within HUD's exclusive possession and control and are among the records specifically sought through Plaintiff's FOIA request filed March 22, 2026. *See* Exhibit 3.

**20**. On May 26, 2022, HUD raised a statute of limitations bar on Plaintiff's third-party discrimination complaint, incorrectly dating the relevant incidents to 2015–2017. Plaintiff

11

corrected HUD's factual error on May 27, 2022, demonstrating that the relevant incidents occurred in 2019 (Exhibit F). HUD did not respond substantively, or otherwise.

21. On January 24, 2024, HUD held a Zoom conference with Plaintiff, attended by five HUD attorneys and officials: Palmer Heenan (Acting Team Lead, FHEO Enforcement Division), Taylor Poe (Trial Attorney, Office of Housing), Stephon D. Woods (Trial Attorney), Erik A. Heins (Director of Enforcement Support), and Han Lee (Assistant Regional Administrator, FHEO) (Exhibit H). HUD's sustained engagement is documented in over 100 emails and communications spanning six years, of which the January 2024 Zoom conference represents the largest personnel commitment.

22. Despite this resource commitment, HUD issued no determination following the Zoom conference. Instead, on March 5, 2025, HUD attorney Palmer Heenan emailed Plaintiff: *"We have been directed that we cannot have communication outside of HUD for the moment."* Plaintiff has received no further substantive communication from HUD. *See* Exhibit J. As of the date of this Complaint, HUD has not issued a final determination on Plaintiff's FHA complaint — a delay of more than six years and more than 2,290 days past the statutory 100-day deadline.

**E.  HUD's Non-Response to Form 95 and Deemed Denial.**

23. On September 4, 2025, Plaintiff filed Form 95 with HUD's Office of General Counsel, Tort Claims Unit, presenting a tort damages claim of $6,536,642 and attaching a 13-page Basis of Claim letter documenting HUD's negligence, causation, and damages (Exhibit 1).

24. HUD did not acknowledge receipt of the Form 95, did not request additional information, did not negotiate, or issue a formal denial within the six-month period prescribed by

28 U.S.C. § 2675(a). By operation of law, HUD's failure to act within six months constitutes a final denial as of March 4, 2026, entitling Plaintiff to file suit in federal district court.

**F. Damages.**

**25**. As a direct and proximate result of HUD's negligence, Plaintiff has suffered the following damages, all of which were reasonably foreseeable consequences of HUD's failure to timely investigate, resolve the FHA complaint or extract itself from the process:

**(a) Property Damage — $557,309.** The Cottonwood Road property has been unusable since 2020 due to the unresolved discrimination. Plaintiff has incurred carrying costs and operating expenses that accrued while the property remained commercially unusable due to the unresolved discrimination, including insurance, taxes, maintenance, legal fees, and related costs, totaling $557,309. *See* Exhibit K (property maintenance expense list).

**(b) Opportunity Loss — $5,479,333.** Accrued through the date of this Complaint, and continuing to accrue through the date of judgment. Plaintiff has lost net operating income from the proposed assisted living facility that would have been realized but for HUD's failure to act. The base figure of $5,479,333 is calculated from a 2020 market study reflecting projected revenues from 2022 onward. *See* Exhibit L (market study and opportunity loss calculations). The Property remains unusable as of the date of this Complaint, and opportunity losses continue to accrue at the rate established in the market study. Plaintiff reserves the right to update her damages calculation to reflect continuing losses through the time of judgment. The FHA's 100-day deadline exists precisely to prevent this type of prolonged and compounding economic harm.

**(c) Emotional Distress — $500,000.** Plaintiff has suffered serious and verifiable emotional distress, anxiety, and mental exhaustion as a direct and proximate result of HUD's six-year course of negligent conduct. This category of damages is pleaded in full as a distinct claim

13

in Count II below, which sets forth the complete three-element analysis under *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810–11 (D.C. 2011) (en banc). The $500,000 figure is added to Count I as a component of Plaintiff's total compensatory damages under the FTCA.

**26**. **Total Damages: $6,536,642.** Total Damages as of the Date of this Complaint: $6,536,642. As a direct and proximate result of HUD's negligence, Plaintiff has suffered compensatory damages totaling $6,536,642 through the date of this Complaint, comprising: (a) $557,309 in property damage, supported by Exhibit K; (b) $5,479,333 in opportunity loss accrued through the date of this Complaint at the rate established in Exhibit L; and (c) $500,000 in emotional distress damages. Opportunity losses continue to accrue beyond the date of this Complaint at the rate established in Exhibit L; Plaintiff reserves the right to recover those additional amounts as set forth in paragraph 5 of the Prayer for Relief.

**27**. Plaintiff has diligently mitigated her damages throughout the six-year period by: making over 100 documented follow-up communications with HUD; submitting supplemental evidence after the reopening; seeking intervention from the Department of Justice and HUD OIG on October 11, 2022; and refraining from filing this action until administrative exhaustion was complete.

## CLAIMS FOR RELIEF

### COUNT I - NEGLIGENCE — FEDERAL TORT CLAIMS ACT  28 U.S.C. § 1346(b)

**28**. Plaintiff incorporates by reference all paragraphs 1 through 27.

**29**. **Duty**. HUD employees owed Plaintiff a clear, mandatory, non-discretionary duty of care arising from: (a) the FHA's 100-day investigation deadline, 42 U.S.C. § 3610(a)(1)(B)(iv); (b) the written notification requirement upon any delay, 42 U.S.C. § 3610(a)(1)(C); (c) HUD's own regulatory framework, 24 C.F.R. §§ 103.215, 103.225, 103.400; and (d) the general duty

under the law of the District of Columbia not to act negligently toward foreseeable persons whose interests a statute is designed to protect. Under D.C. common law, a defendant owes a duty of care where the risk of harm to the plaintiff was reasonably foreseeable. *Haynesworth v. D.H. Stevens Co.,* 645 A.2d 1095, 1098 (D.C. 1994).

30. **Breach.** HUD employees breached their duty of care through the following acts and omissions, each individually constituting negligence and collectively constituting a pattern of negligent conduct:

(a)  Failing to complete the FHA investigation within 100 days as mandated by statute;

(b)  Failing to provide written notification of the delay as required by 42 U.S.C. § 3610(a)(1)(C);

(c)  Issuing a Determination of No Reasonable Cause premised on material errors;

(d)  Assigning investigator James Kordich to conduct conciliation sessions contrary to 24 C.F.R. § 103.315 and review his own erroneous determination on reconsideration, creating an unreviewable structural bias;

(e)  Failing to meaningfully consider or respond to Plaintiff's evidence of SOA's substantial federal financial assistance, submitted both at the initial stage and post-Zoom conference;

(f)  Failing to provide written notification of delay at each successive 100-day interval as required by 42 U.S.C. § 3610(a)(1)(C) and 24 C.F.R. § 103.225. HUD was required to send written notification each time it failed to meet the 100-day benchmark. Across more than 2,290 days — HUD never sent a single written notification. This systematic failure to comply with the recurrent notification duty is independent of, and in addition to, the underlying failure to complete the investigation;

(g) Failing to investigate the third-party discrimination complaint filed March 30, 2020, which documented nationality-based harassment, targeted intimidation of project supporters, and an in-

15

person physical confrontation at Plaintiff's business — all occurring in 2019 and all prohibited under 42 U.S.C. § 3617. *First*, investigator Kordich affirmatively misdirected Plaintiff on March 31, 2020, characterizing the applicable regulation as "not a separate cause of action" and directing consolidation into the primary complaint — a direction Plaintiff followed — after which HUD issued its September 30, 2020, determination without addressing the third-party complaint at all. *Second,* and independently: during reconsideration, HUD raised a statute of limitations bar on May 26, 2022, mischaracterizing all documented incidents as occurring in 2015–2017. Plaintiff corrected this factual error in writing on May 27, 2022, demonstrating that every incident documented in the third-party complaint arose from 2019 Facebook posts and blog posts responding to Plaintiff's then-pending FHA complaint — well within the limitations period. HUD had a mandatory, non-discretionary duty under 42 U.S.C. § 3617 to open an investigation on the corrected timeline and failed to do so. *See* Exhibit B and F. A federal agency cannot misdirect a complainant into a procedural posture and then invoke that posture as a defense to its own mandatory investigative duty. HUD's failure to investigate after written correction of its factual error constitutes an independent breach of non-discretionary duty;

(h) Directing a unilateral communication cutoff on March 5, 2025 — while Plaintiff's complaint remained open and unresolved — without issuing a determination, without providing alternative process, and without legal authority to abandon mandatory statutory and regulatory duties to the complainant. This cutoff eliminated Plaintiff's ability to seek administrative protection and foreclosed any remaining remedial options within the HUD process;

(i) On information and belief, outsourcing, consulting with, or otherwise involving Ball Janik LLP — a firm with a direct conflict of interest as counsel to Sunriver Resort and drafter of SOA's founding governing documents — in the handling of Plaintiff's FHA complaint during

16

the reconsideration period, in violation of the impartial investigation requirements of 42 U.S.C. § 3610 and the Fifth Amendment. This breach is pleaded in full as Count III below; and

(j) Issuing a determination that failed to address the incompatibility of the deed restrictions with ORS 93.270(2) and (3), which expressly void any restriction prohibiting the use of property by a facility licensed under ORS 443.400–443.455, thereby compounding the factual error identified in ¶ 16. HUD's omission of this state-law nullity from its analysis constitutes an additional factual deficiency in the determination, not a policy judgment — it is further evidence of the absence of the meaningful investigative review that HUD's mandatory framework required.

31. The foregoing acts and omissions, individually and in the aggregate, constitute a sustained and systematic pattern of negligent conduct spanning more than 6 years and more than 22 independent missed statutory obligations. Each breach described in subparagraphs 30(a) through 30(j) is independently sufficient to establish liability; together, they describe an institutional failure of the mandatory statutory framework Congress enacted specifically to protect FHA complainants from the precise category of harm Plaintiff suffered.

32. As a direct and proximate result of the breaches set forth in ¶ 30, Plaintiff suffered the damages described in ¶¶25 and 26, including property damage of $557,309, opportunity loss of $5,479,333 accrued through the date of this Complaint and continuing to the date of judgment, emotional distress of $500,000, and the permanent destruction of Plaintiff's remedial legal posture under the FHA — an independent category of harm described in ¶ 41 below.

33. **Negligence Per Se.** HUD's violations of the FHA's mandatory investigation and notification requirements constitute negligence per se under the law of the District of Columbia. Under D.C. law, negligence per se applies "where a particular statutory or regulatory standard is enacted to prevent the type of accident that occurred," and an unexplained violation of that

17

standard establishes negligence as a matter of law. *See District of Columbia v. Fowler*, 497 A.2d 456, 461 (D.C. 1985). Three elements are satisfied here:

(a) **Statutory Standard of Conduct.** The FHA establishes a clear and mandatory standard: HUD "*shall*" complete its investigation within 100 days and "*shall*" provide written notification of any delay at each interval of non-completion. 42 U.S.C. § 3610(a)(1)(B)(iv), (C). "*Shall*" is mandatory. This is not a general standard of reasonableness — it is a specific standard enacted by Congress, a non-discretionary act specifying the exact process for complaint investigations.

(b) **Class of Persons**. Plaintiff is within the class of persons the FHA is designed to protect. The FHA's 100-day investigation mandate exists specifically to protect FHA complainants from the prolonged economic harm caused by unresolved discrimination precisely what occurred here.

(c) **Type of Harm**. Plaintiff suffered the type of harm the statute is designed to prevent. The FHA's 100-day deadline was enacted precisely to prevent complainants from suffering extended property deprivation, lost economic opportunity, and continued exposure to unaddressed discrimination while a complaint languishes unresolved. Plaintiff suffered all three.

HUD's failure to comply with the 100-day mandate — over 6 years — constitutes negligence per se. Plaintiff need not independently establish the standard of care because Congress has already done so with mandatory statutory language.

**34**. **Private Analogue**. The private analogue requirement of 28 U.S.C. § 1346(b) is satisfied for the negligence per se theory independently of the general negligence analysis. A private investigation firm retained under contract to conduct a civil rights investigation within a specified statutory deadline, and failing to send required status notifications as to why it was unable to complete its work, across 6 years of non-completion, would be liable for negligence per se under D.C. law where the contract incorporates a statutory standard of conduct directed at

the protection of the client's legally cognizable interests. *See United States v. Olson,* 546 U.S. 43, 46 (2005) (FTCA requires courts to look for an "appropriate analogy" to private liability under applicable state law, not an identical situation).

**35**. **Discretionary Function Exception Inapplicable.** The FTCA's discretionary function exception, 28 U.S.C. § 2680(a), does not shield any of HUD's conduct. Under the Supreme Court's two-part test in *Berkovitz v. United States*, 486 U.S. 531 (1988), the exception applies only where: (1) the challenged conduct involves an element of judgment or choice, and (2) that judgment is of the kind the exception was designed to shield — i.e., grounded in social, economic, or political policy considerations. Neither prong is satisfied here.

**36**. **Prong One — No Discretion Exists.** (a) **The 100-day investigation deadline**. The FHA commands that HUD "*shall*" complete its investigation and make a determination within 100 days. 42 U.S.C. § 3610(a)(1)(B)(iv). "*Shall*" is mandatory. There is no discretion to exceed that deadline; (b) **The written notification requirement — triggered every 100 days.** The FHA's impracticability provision is not a general escape clause. It is a narrow, procedurally conditioned exception that requires HUD to notify complainant and respondent in writing of the *reasons for any delay*. 42 U.S.C. § 3610(a)(1)(C); 24 C.F.R. § 103.225. This notification obligation is itself non-discretionary and recurs at each successive 100-day interval for which investigation remains incomplete. HUD never sent a single such written notification — not at day 100, not at day 200, not at any point across more than 2,290 days of delay, representing more than 22 missed notification intervals. An agency cannot retroactively invoke an impracticability defense it never documented, never exercised, and never triggered through the mandatory procedural mechanism Congress prescribed. The failure to send required written notifications at each interval is itself an independent and recurring breach of a non-discretionary duty; (c) **The**

**third-party discrimination complaint**. The absence of any legitimate investigative judgment is confirmed by the record: investigator Kordich characterized the third-party complaint as "approach to liability". *See* Exhibit B; ¶15 above. An investigator who classifies a mandatory fair housing complaint as tactical leverage rather than a legal obligation to be fulfilled is not exercising policy-grounded discretion — he is deciding in advance to circumvent a non-discretionary statutory duty. No statute, regulation, or HUD policy authorized an investigator to classify a mandatory fair housing complaint as strategic leverage. That decision falls entirely outside the scope of conduct the discretionary function exception was designed to protect. *Berkovitz*, 486 U.S. at 536–37. The FHA independently obligates HUD to investigate third-party interference and intimidation under 42 U.S.C. § 3617, which prohibits coercion, intimidation, threats, or interference with any person exercising rights protected by the FHA. HUD raised a purported statute of limitations bar on May 26, 2022, mischaracterizing the relevant incidents as occurring in 2015–2017 (Exhibit F). Plaintiff corrected this error in writing on May 27, 2022, demonstrating that the incidents occurred in 2019, well within the limitations period. The manufacture of a limitations bar based on a factual error — and the refusal to correct it after written notice — is not a policy judgment. It is a factual mistake that itself constitutes a breach of mandatory investigative duty. The manufactured limitations bar was not a new policy choice — it was a complete failure and abandonment; (d) **The communication cutoff**. On March 5, 2025, HUD attorney Palmer Heenan notified Plaintiff: "We have been directed that we cannot have communication outside of HUD for the moment." No explanation was provided. No determination was issued. No alternative process was offered. This directive — issued while Plaintiff's complaint remained formally open and unresolved — violated HUD's independent non-discretionary obligations to maintain the complaint process and communicate with

complainants under 24 C.F.R. §§ 103.215 and 103.225. An institutional directive to cut off communication with a complainant whose mandatory determination is more than 1,900 days overdue is not a policy choice entitled to deference — it is an abandonment of mandatory statutory and regulatory duties. It also eliminated any remaining possibility that Plaintiff could protect her rights through the administrative process; (e) **Conciliation process.** HUD was required to assign a person other than the investigator to conduct conciliation between the parties during the sessions attempted by both parties under 24 C.F.R. § 103.315. No exceptional circumstances were evident to either party which required the same investigator to assist in the process; (f) **Reconsideration process.** James Kordich was assigned to review his own erroneous Determination of No Reasonable Cause.

37. **Prong Two — No Policy Grounding**. Even where some element of judgment exists, the discretionary function exception does not apply unless the judgment is specifically grounded in social, economic, or political policy of the kind the exception was designed to protect. *United States v. Gaubert,* 499 U.S. 315, 322–23 (1991). The Supreme Court has emphasized that the exception "protects only governmental actions and decisions based on considerations of public policy" — not every act that involves a choice. *Id*. (quoting *Berkovitz*, 486 U.S. at 537). The focus is "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 324. Moreover, within the D.C. Circuit, the discretionary function exception does not shield conduct that exceeds the government's constitutional or statutory authority to act, even where the conduct is otherwise discretionary in character. *Loumiet v. United States, 8*28 F.3d 935, 942–44 (D.C. Cir. 2016).

**38**. None of HUD's conduct at any stage is susceptible to policy analysis:

(a) Failing to send mandatory written delay notifications at each 100-day interval is not a policy choice — it is administrative neglect of a ministerial obligation that Congress prescribed in express, mandatory terms.

(b) Reassigning investigator Kordich to review his own erroneous determination is not a resource allocation policy — it is a structural conflict of interest that violates HUD's regulatory obligation to conduct impartial investigations. 24 C.F.R. § 103.225; 42 U.S.C. § 3610 and the Fifth Amendment's due process guarantee;

(c) Mischaracterizing the dates of documented 2019 incidents as 2015–2017 is not an investigative judgment — it is a factual error that manufactured a limitations bar where none existed. Factual mistakes do not reflect policy analysis; they reflect the absence of it.

(d) Directing a blanket communication cutoff while the mandatory statutory process remained open and unresolved is not agency prioritization — it is institutional abandonment of mandatory duty that the FHA and HUD's own regulations at 42 U.S.C. § 3610 and 24 C.F.R. § 103.225 did not authorize;

(e) Involving adversely-interested outside counsel in an active investigation is not resource allocation — it is a structural conflict prohibited by 42 U.S.C. § 3610 and the Fifth Amendment's due process guarantee; and

(f) Failure to address the factual incompatibility of SOA's deed restrictions with ORS 93.270(2) and (3) is a factual deficiency, not a policy choice. It reflects the same absence of policy analysis that characterizes each other breach identified above.

Policy-grounded discretion means choices about enforcement priorities across a caseload, resource distribution among competing programs, or litigation strategy. Factual mistakes do not

22

reflect policy analysis; they reflect the absence of it. *Gaubert, 499 U.S.* at 324. It does not encompass individual investigative errors, procedural omissions, structural conflicts of interest, or unilateral withdrawal from mandatory administrative processes while a complainant's rights remain unresolved. *Berkovitz*, 486 U.S. at 536–37. Because HUD's conduct at each stage involved breach of a mandatory duty, and because none of that conduct was grounded in the kind of policy judgment the exception was designed to protect, the discretionary function exception does not apply to any of the challenged conduct.

39. **Private Analogue.** FTCA liability requires that a private person would be liable under applicable state law in like circumstances. 28 U.S.C. § 1346(b)(1); *United States v. Olson,* 546 U.S. 43, 46 (2005). Because HUD's acts and omissions occurred in Washington, D.C., District of Columbia law supplies the governing private analogue. *Speelman v. United States,* 461 F. Supp. 2d 71, 74 (D.D.C. 2006). Multiple D.C.-law private analogues support liability. *First*, a private attorney or fiduciary who holds a client's matter open without action for six years while representing that the matter remains active, and then unilaterally severs communication without completing the assigned task, would face professional negligence liability under D.C. law. *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982) (D.C. legal malpractice requires proof of applicable standard of care, breach, and causal relationship). The standard of care under D.C. law is informed by the D.C. Rules of Professional Conduct, which require a fiduciary to act with reasonable diligence and promptness (Rule 1.3), keep the client reasonably informed of the status of the matter (Rule 1.4), and refrain from unilaterally severing representation in a manner that has a material adverse effect on the client's interests (Rule 1.16). HUD's six-year pattern of inaction, its continuous representations that the investigation remained active, and its abrupt March 5, 2025, communication cutoff map precisely onto each element of this standard.

*Second*, a private investigative firm retained under contract to investigate discrimination complaints within a specified deadline, which fails to complete the investigation or provide required status notifications across a six-year period, is liable in tort under D.C. law for negligent undertaking. Under Restatement (Second) of Torts § 324A, one who undertakes to render services to another that he should recognize as necessary for the protection of a third person is subject to liability for physical harm or economic loss resulting from failure to exercise reasonable care. *Haynesworth v. D.H. Stevens Co.,* 645 A.2d 1095, 1098 (D.C. 1994). HUD assumed mandatory investigative and notification duties under 42 U.S.C. §§ 3610(a)(1)(B) and (g)(1); Plaintiff detrimentally relied on completion of those duties; and HUD's six-year failure increased the risk and ultimately destroyed the remedial posture available to Plaintiff at the time. *Third*, HUD's failure is analogous to a private property management company that assumes a contractual duty to investigate and address discrimination complaints and then wholly abandons that duty. *District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001).

40. **Misrepresentation Exception Inapplicable.** The FTCA's misrepresentation exception, 28 U.S.C. § 2680(h), does not bar any claim asserted herein. The gravamen of each count is not in statements HUD made — that the third-party discrimination complaint is 'an approach to liability,' and later that the complaint was barred by statute of limitations — but in HUD's failure to act: to investigate, to notify, to determine, and to maintain the complaint process. The Supreme Court drew this line in *Block v. Neal*, 460 U.S. 289, 296–97 (1983), holding that § 2680(h) does not bar claims where "the Government's alleged negligence consisted of its failure" to perform an affirmative undertaking — not in any misrepresentation. That holding controls here. HUD's representations that the investigation remained active are not the negligent conduct; they are context establishing Plaintiff's detrimental reliance on HUD's

performance of a mandatory statutory duty and the causal connection between HUD's failure to perform and Plaintiff's resulting harm. The negligent conduct throughout is the omission: failure to investigate, failure to notify, failure to determine, and ultimately the affirmative act of institutionally abandoning a mandatory statutory proceeding on March 5, 2025, without issuing a determination.

**41**. **Causation**. HUD's negligence was the direct and proximate cause of Plaintiff's damages under D.C. causation standards and Restatement (Second) of Torts § 324A(b)–(c), on two independent and alternative theories, each sufficient standing alone.

**A. Destruction of Legal Remedy as Independent Injury.** The first theory does not require proof that SOA would have granted the requested accommodation or that the assisted living facility would have been built. It requires only proof that HUD's failure to act destroyed a category of legal protection that existed at the time of the breach and was progressively eroded by HUD's six-year delay. That showing is made on this record. When Plaintiff filed her FHA complaint in August 2019, she possessed a full and immediately actionable set of enforcement rights: (1) the right to a HUD determination within 100 days under 42 U.S.C. § 3610(a)(1)(B)(iv); (2) upon a reasonable cause finding, the right to HUD-directed conciliation backed by mandatory statutory process under 42 U.S.C. § 3610(b); (3) upon failure of conciliation, the right to an administrative hearing or civil action with a pending agency finding of reasonable cause; and (4) the right to seek emergency injunctive relief under 42 U.S.C. § 3613(c)(1) based on a completed agency finding — a remedy available precisely because the FHA recognizes that discrimination in housing contexts causes time-sensitive and irreversible harm. Each of these remedies was time-sensitive in a legally cognizable sense. The statutory conciliation mechanism under § 3610(b) operates at a specific juncture — after reasonable cause,

before civil action — during which HUD brings its institutional authority to bear on a respondent who has received a formal agency finding against it. Six years of administrative non-resolution did not merely delay that mechanism; it destroyed it. The harm Plaintiff suffered is therefore not contingent on proving SOA would have capitulated to conciliation. It is the destruction of the legal posture — including remedies that are hard to salvage in practical terms — that is itself the injury. Courts applying D.C. negligence law have recognized that the destruction of a plaintiff's legal or remedial position constitutes a cognizable injury independent of the ultimate merits of the underlying claim. *See* Restatement (Second) of Torts § 324A(b)–(c) (liability where the undertaking has increased the risk of harm or harm results from reliance on the undertaking); *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994). Plaintiff does not contend that SOA's capitulation was certain. She contends that HUD's negligence destroyed the conditions under which that outcome was achievable — a favorable agency determination, institutional conciliation pressure, and a live development window — and that the loss of those conditions is itself the cognizable harm. The damages figure represents the economic value of the development opportunity that existed when Plaintiff filed her complaint and that HUD's systematic non-performance progressively eliminated. Under D.C. negligence law, a plaintiff need not prove the lost opportunity would have been realized with certainty; she need only prove that it existed and that the defendant's conduct destroyed it.

**B. Deprivation of § 3613 Election.** The second theory addresses a distinct causation pathway arising from HUD's failure to send the written notifications required at each 100-day interval under 42 U.S.C. § 3610(a)(1)(C) and 24 C.F.R. § 103.225. Under 42 U.S.C. § 3613(a)(1)(A), a complainant may bring a private civil action for violation of the FHA within two years of the occurrence or termination of the discriminatory housing practice. Under §

3613(a)(1)(B), the limitations period is tolled during the period of any HUD conciliation proceeding. Throughout the HUD process, Plaintiff's private civil action rights were nominally preserved but practically suspended: the complaint was pending, the tolling provision applied, and HUD's continuous representations that the investigation remained active gave Plaintiff no reason to know that she should bypass the administrative process and pursue independent civil litigation. This is exactly the harm the § 3610(a)(1)(C) written notification obligation is designed to prevent. Congress required written notification of delay at each successive 100-day interval precisely so that complainants would have the information necessary to decide whether to continue relying on the administrative process or to pursue independent judicial remedies. Had HUD sent even a single required written notification acknowledging delay and providing reasons, Plaintiff would have had actionable information to assess whether to maintain reliance on the administrative process or file a direct civil action under § 3613 while the development window was open, the petition evidence was current, and injunctive relief remained a practical remedy. HUD sent no such written notification — not at day 100, not at day 200, not at any point across more than 2,290 days. This systematic failure to provide the information Congress mandated deprived Plaintiff of the ability to make a timely, informed election between the administrative and judicial tracks. The causal chain on this theory is also direct: HUD's failure to send required written notifications → Plaintiff reasonably continues relying on HUD process → private civil action window closes without the enforcement leverage that a timely HUD determination would have provided → development opportunity destroyed. The injury is not speculative. It is the loss of a litigation option that would have been available had HUD fulfilled its ministerial obligation to communicate. The injury is compounded by an evidentiary asymmetry that made the § 3613 election structurally unavailable independent of Plaintiff's

27

subjective awareness. The evidence necessary to litigate directly against SOA — HUD's investigative file, the federal funding documentation, the third-party harassment record, and the six-year conciliation history — was held in HUD's exclusive possession and never formalized into a record Plaintiff could use in independent litigation. HUD's failure to complete the investigation did not merely deprive Plaintiff of the information needed to make an informed election. It ensured that one branch of that election was practically unavailable because the evidentiary foundation for it remained locked within a process HUD had abandoned without resolution. To hold otherwise would relieve HUD of its mandatory statutory obligations entirely — permitting the agency to abandon a six-year investigation without consequence on the theory that the complainant could have litigated privately instead. Congress did not create the FHA's mandatory investigative framework as an optional service that complainants must duplicate at their own expense when the agency fails to perform it.

      **C. Causation Reinforced by SOA's Federal Funding and the Petition Record.** Both theories are independently sufficient, but causation is additionally reinforced by the evidentiary record. A correctly conducted investigation — one that considered Plaintiff's October 2020 documentary evidence of SOA's substantial federal financial assistance would have ended the jurisdictional basis on which the 2020 Determination of No Reasonable Cause explicitly rested. A determination that corrected that factual error would have, at a minimum, reopened the conciliation track and triggered HUD's mandatory conciliation obligation under § 3610(b). The 1,360 signed petitions — representing a documented supermajority-level response to a 2,000-owner list provided by SOA itself, including support approaching SOA's own stated 75% threshold — established that the requested accommodation was both reasonable and achievable. These are not speculative inputs; they are documentary facts in the administrative record. Under

D.C. negligence law, proximate cause requires that the defendant's breach was a substantial factor in producing the plaintiff's harm and that the harm was a foreseeable consequence of the breach. *Powell v. District of Columbia,* 634 A.2d 403, 406 (D.C. 1993); *Haynesworth*, 645 A.2d at 1098. Both elements are satisfied on either theory: HUD's systematic non-performance across 2,290 days was a substantial factor in the destruction of Plaintiff's enforcement posture, and the economic harm flowing from an unresolved FHA complaint against a homeowners association over a commercial property's authorized use is precisely the category of harm the FHA's mandatory 100-day investigation framework was enacted to prevent.

42. **Damages.** As a direct and proximate result of HUD's negligence, Plaintiff has suffered $6,536,642 in compensable damages as set forth in ¶¶ 25 and 26 above. These damages are supported by documentary evidence including a market study, property expense records, and deed documentation, attached hereto as Exhibits K and L.

### COUNT II - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS — FTCA

28 U.S.C. § 1346(b); *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789 (D.C. 2011)

43. Plaintiff incorporates by reference all paragraphs 1 through 42.

44. **Duty and Relationship — First *Hedgepeth* Element.** Under *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 810–11 (D.C. 2011) (en banc), a plaintiff may recover for negligent infliction of emotional distress where the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being. That element is satisfied here. HUD assumed a specific, non-discretionary obligation running directly to Plaintiff as the named complainant when it accepted her FHA complaint for investigation. The FHA's mandatory investigative framework created a duty specifically owed to Plaintiff as an identified individual, not to the public generally. That duty

29

necessarily implicated Plaintiff's emotional well-being: the entire purpose of the FHA complaint process is to protect complainants from the ongoing harm of unresolved discrimination, and a complainant who files such a complaint is in a position of dependence on HUD's performance no less than the patient in *Hedgepeth* was dependent on the clinic's. The subject matter — whether Plaintiff could develop an assisted living facility on her own commercial property — was central to her economic security, her physical property, and her professional life over a six-year span. HUD's duty to Plaintiff was not a generalized public duty; it was a particularized obligation assumed by statute toward an identified individual whose interests the FHA's mandatory investigation framework was specifically designed to protect.

**45. Likelihood of Serious Emotional Distress — Second *Hedgepeth* Element.** The second *Hedgepeth* element requires that there be an especially likely risk that the defendant's negligence would cause serious emotional distress. That element is satisfied here. That likelihood was compounded by the documented fact that investigator Kordich characterized Plaintiff's third-party discrimination complaint as "approach to liability". *See* Exhibit B; ¶15 above. A complainant whose mandatory civil rights complaint has been pre-classified as a strategic instrument rather than a legal obligation to be resolved — and who later discovers that characterization — faces not merely bureaucratic delay but the knowledge that the process was never intended to provide the protection it promised. That awareness, combined with six years of carrying costs and unaddressed public harassment, satisfies the second *Hedgepeth* element independently. The FHA's 100-day investigation deadline exists precisely because Congress recognized that prolonged administrative inaction in fair housing proceedings is itself a source of serious harm to complainants. A complainant who watches a viable commercial property sit unusable for six years, who makes over 100 documented follow-up communications and receives

no resolution, and who is ultimately subjected to an institutional communication blackout while her complaint remains formally open, faces the kind of sustained, documented uncertainty that D.C. law recognizes as producing distress of the requisite seriousness. Moreover, the multiple letters from potential residents in need of her services were subjected to the same indifference. And last, Plaintiff's case involved a documented pattern of nationality-based public harassment occurring in direct response to her FHA complaint — harassment that HUD failed to investigate despite a mandatory duty to do so, including an in-person physical confrontation at her business facility. The combination of prolonged economic harm, sustained administrative abandonment, unaddressed public harassment, and ultimate institutional cutoff made serious emotional distress not merely foreseeable but, on this record, nearly inevitable.

**46. Actual Serious Emotional Distress — Third *Hedgepeth* Element.** The third *Hedgepeth* element requires that negligent acts or omissions of the defendant in breach of the recognized obligation have, in fact, caused serious emotional distress to the plaintiff. That element is satisfied here. The sources of that distress are concrete and specific: six years of property financial burden with no offsetting income; an in-person physical confrontation at Plaintiff's own business; HUD's institutional misdirection of the third-party discrimination complaint, directing its consolidation and then issuing a determination that entirely omitted it; and the March 5, 2025 communication blackout that permanently eliminated any remaining possibility of administrative protection. Non-economic damages in the District of Columbia are determined by the trier of fact and are not subject to statutory cap. As a direct result of HUD's six-year course of conduct, Plaintiff experienced chronic anxiety, sleep disruption, and sustained psychological distress that affected her daily functioning and professional capacity over the period from 2020 through 2025. [Add any specific facts you are comfortable attesting to —

31

treatment sought, impact on work or health, documented communications reflecting distress, etc.] These effects were directly and causally connected to HUD's conduct, not to independent life circumstances.

47. **Private Analogue.** The private analogue requirement is independently satisfied for Count II. Under D.C. law, a private attorney or fiduciary who holds a client's matter open without action for six years while representing that the matter remains active, and who then unilaterally severs communication without completing the assigned task, exposes the client to a sustained period of anxiety, uncertainty, and unresolved harm of a nature that necessarily implicates emotional well-being and foreseeably produces serious emotional distress, particularly where the subject matter of the representation is central to the client's livelihood and economic security. *Hedgepeth*, 22 A.3d at 810–11. HUD's six-year investigative inaction and abrupt communication cutoff map precisely onto this analogue.

48. **Causation and Damages.** HUD's negligent breach of its mandatory investigative obligation was the direct and proximate cause of Plaintiff's serious emotional distress. But for HUD's failure to complete its investigation within the 100-day statutory period and its subsequent six-year pattern of inaction, abandonment, and institutional silence, Plaintiff would not have been subjected to the sustained uncertainty, financial burden, nationality-based harassment, and ultimate administrative cutoff that produced serious emotional distress. Plaintiff's emotional distress damages of $500,000 reflect six years of verifiable, documented harm attributable directly and proximately to HUD's breach of its mandatory statutory duties.

32

**COUNT III** - **NEGLIGENCE — FAILURE TO MAINTAIN IMPARTIAL INVESTIGATION AND STRUCTURAL CONFLICT OF INTEREST**

28 U.S.C. § 1346(b); 42 U.S.C. § 3610

**49.** Plaintiff incorporates by reference all paragraphs 1 through 48.

**50. Duty — Impartial Investigation.** In addition to the statutory duties established by the FHA, HUD employees owed Plaintiff a distinct, non-discretionary duty to conduct the investigation impartially and free from actual or apparent conflicts of interest. That duty arises from three independent sources. *First*, 42 U.S.C. § 3610 establishes a mandatory investigative framework that necessarily requires impartial process: a statutory command to investigate and determine cannot be discharged by an investigator who has pre-classified the complainant's submission as tactical leverage, who reviews his own prior erroneous determination, or who involves adversely-interested outside counsel in the file. *Second*, HUD's own regulations independently require impartial process. 24 C.F.R. §§ 103.215 and 103.225 impose non-discretionary obligations governing investigator conduct and the integrity of the investigation. Those regulatory provisions are violated whenever an investigator with a structural conflict of interest reviews his own prior work or involves adversely-interested outside counsel in the file. *Third*, the Fifth Amendment's due process guarantee requires that federal agency adjudicative proceedings be conducted by a neutral decision-maker, free from the structural bias that necessarily attends self-review of one's own prior work. As structural background, the APA's combination-of-functions principle — reflected in 5 U.S.C. § 554(d) for formal adjudication and 24 C.F.R. § 103.300(c) (prohibiting investigators from participating in or advising on conciliation of the same or any factually related complaint) — reinforces the policy rationale against assigning the same official to both make and review a determination, and supports the

33

inference that HUD's regulatory framework should be read in harmony with that principle where an investigator is tasked with reconsidering his own prior work. These duties are mandatory and non-discretionary; HUD has no authority to conduct partial investigations, to assign investigators to review their own work, or to involve adversely interested outside counsel in the handling of an active complaint.

51. **Breach — Kordich Structural Self-Review.** HUD breached its impartiality duty by reassigning investigator James Kordich — the same employee who authored the Determination of No Reasonable Cause containing material factual errors regarding SOA's federal funding — to oversee reconsideration of his own prior determination. Kordich's supervisory role in reconsideration placed him in the position of reviewing, defending, and ultimately sustaining a determination that bore his name, with institutional and professional incentives against correcting his own error. Kordich's structural conflict was not merely positional. His characterization of Plaintiff's third-party discrimination complaint as "approach to liability" — documented in Exhibit B and ¶15 above — established an affirmative, pre-determined bias toward non-resolution that preceded the initial determination he was later assigned to review. Assigning an investigator with documented pre-existing instrumental bias to supervise reconsideration of his own prior work violated 42 U.S.C. § 3610's mandatory impartial investigation framework, HUD's regulatory obligations under 24 C.F.R. §§ 103.215 and 103.225, 24 C.F.R. § 103.300(c) (prohibiting investigators from participating in or advising on conciliation of the same or any factually related complaint), and the Fifth Amendment's due process guarantee of a neutral decision-maker — independently, and cumulatively. This structural conflict independently caused harm by ensuring that the reconsideration proceeding was not conducted by an impartial decision-maker, regardless of the weight of evidence Plaintiff submitted.

34

**52. Breach — Ball Janik Conflict of Interest[2]**. On information and belief, as alleged in ¶ 19, HUD employees involved in the reconsideration proceeding outsourced, consulted with, or otherwise communicated Plaintiff's confidential FHA complaint file to Ball Janik LLP during the period of active reconsideration between December 2021 and March 2025. The primary plausibility basis for this allegation is a concrete, documented fact: in February 2020, while Plaintiff's FHA complaint was actively pending, lead investigator James Kordich conducted a fair housing lecture for Ball Janik LLP that Plaintiff personally attended alongside more than fifty Ball Janik attorneys. This documented professional relationship between Kordich and Ball Janik predated and overlapped with both his March 31, 2020, misdirection of Plaintiff's third-party complaint and his subsequent role in the reconsideration proceeding. Ball Janik's representation of Sunriver Resort LP — an affiliate of the respondent SOA — and its role in drafting SOA's founding governing documents created a direct conflict of interest that 42 U.S.C. § 3610's mandatory impartial investigation framework prohibits. The plausibility of outside-counsel involvement in drafting the determination is further supported, as corroborating circumstantial evidence, by Plaintiff's direct textual analysis of the September 30, 2020, Determination of No Reasonable Cause. As set forth in ¶ 19, that document contains terminology, structural patterns, and analytical omissions that are inconsistent with HUD's own contemporaneous writing as reflected elsewhere in the six-year record, and that are consistent with authorship or substantial drafting contribution by counsel with intimate knowledge of SOA arguments against the proposed assisted living. An impartially-authored investigative determination would be expected to engage with the strongest evidence in the record, including

---

[2] "[I]n civil rights cases 'much of the evidence can be developed only through discovery' of materials held by defendant officials." *Frazier v. Southeastern Pa. Transp. Auth.,* 785 F.2d 65, 68 (3d Cir. 1986)

the 1,360 signed petitions, the documented pattern of coordinated interference, and Plaintiff's third-party discrimination complaint. The determination addressed none of these. The combination of Kordich's documented professional relationship with Ball Janik, Ball Janik's direct representation of the respondent's affiliate, and the determination's textual characteristics collectively support the inference that adverse counsel participated in drafting or materially shaping the document. If Ball Janik's involvement occurred as alleged, it constituted an independent and structural breach of HUD's impartiality obligation, contaminating the reconsideration proceeding from its inception. This allegation is pleaded on information and belief and is subject to confirmation or revision following disclosure of communications and engagement records within HUD's exclusive possession and control, including records responsive to Plaintiff's FOIA request filed March 22, 2026 (Exhibit 3), and through ordinary civil discovery.

**53. Discretionary Function Exception Inapplicable.** The discretionary function exception, 28 U.S.C. § 2680(a), does not shield any of the conduct alleged in Count III. The duty to conduct impartial investigations under 42 U.S.C. § 3610 and HUD's regulatory framework is mandatory and non-discretionary. HUD has no authority to assign investigators with structural conflicts of interest, to involve adversely interested outside counsel, or to decline to respond to conflict-of-interest inquiries. None of the conduct alleged constitutes a policy judgment grounded in social, economic, or political considerations. Selecting which investigator to assign is not a policy choice when the regulatory prohibition against self-review and the Fifth Amendment's neutrality requirement independently bar assigning the same person who conducted the initial investigation to supervise reconsideration of that same matter. Involving adversely-interested outside counsel is not agency resource allocation. *See Berkovitz v. United*

36

*States,* 486 U.S. 531 (1988); *United States v. Gaubert,* 499 U.S. 315 (1991); *Loumiet v. United States,* 828 F.3d 935, 942–44 (D.C. Cir. 2016).

**54. Private Analogue.** A private investigation firm or professional service provider that assigns a conflicted investigator to review his own prior work, involves adversely interested outside counsel in an active investigation, and fails to respond to documented conflict-of-interest inquiries would face professional negligence and breach of fiduciary duty liability under D.C. law. *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C. 1982). The standard of care applicable to such a provider is further defined by D.C. Rule of Professional Conduct 1.3 (diligence), Rule 1.4 (communication), and the conflict-of-interest provisions of Rule 1.7, which collectively prohibit a professional from continuing a representation that is materially limited by the representative's own prior involvement in the subject matter. Kordich's structural self-review and HUD's sustained silence on the Ball Janik inquiry violate each of these standards. The conflict-of-interest obligations applicable to private investigators and professional service providers in D.C. directly parallel the statutory impartiality obligations under 42 U.S.C. § 3610 and HUD's implementing regulations, making D.C. professional negligence the appropriate private analogue for Count III under 28 U.S.C. § 1346(b)(1) and *United States v. Olson*, 546 U.S. 43 (2005).

**55. Causation and Damages.** HUD's breach of its impartiality obligation was a proximate cause of Plaintiff's damages independent of, and in addition to, the general negligence theories set forth in Counts I and II. The structural conflict of interest embedded in the reconsideration proceeding — through Kordich's self-review and Ball Janik's alleged involvement — ensured that the proceeding could not produce an impartial correction of the factual error underlying the 2020 determination, regardless of the evidence Plaintiff submitted. Had the reconsideration been conducted by a conflict-free investigator, without adversely-

interested outside counsel involvement and with substantive response to the evidence of SOA's federal funding, the reconsideration proceeding would have resulted in a different determination, preserving Plaintiff's development opportunity and avoiding the full measure of damages described in ¶¶ 25 and 26. Because the structural conflicts operated throughout the reconsideration period — a span of more than three years from December 2021 to March 2025 — their cumulative causal contribution to Plaintiff's damages is substantial and independently actionable. Plaintiff seeks the full measure of compensatory damages set forth in paragraph 26, jointly and severally as to Counts I, II, and III, arising from HUD's negligent, structurally compromised, and institutionally abandoned investigation.

### COUNT IV - NEGLIGENT INVESTIGATION AND NEGLIGENT SUPERVISION

Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1)

**56.** Plaintiff incorporates by reference all paragraphs 1 through 55.

**57. Independent Basis for Count IV**. Count IV asserts a distinct theory of liability from Count I. Count I addresses the direct, affirmative negligent acts and omissions of HUD investigative and enforcement personnel. Count IV addresses the independent negligence of HUD supervisory personnel — different actors operating at a different level of the organizational hierarchy — who owed a non-discretionary duty to monitor, correct, and where necessary reassign the personnel conducting the investigation. The supervisory breaches identified in this Count arose from separate omissions (failure to reassign a conflicted investigator, failure to honor status representations, institutional issuance of the March 5, 2025 communication directive) by different decision-makers, and are independently actionable regardless of whether the direct investigative negligence in Count I is established. The two theories are pleaded in the alternative and cumulatively.

38

**58**. **Duty**. Independent of its direct investigative obligations, HUD owed Plaintiff a non-discretionary duty to supervise the investigation of her FHA complaint within the parameters required by 42 U.S.C. § 3610, 24 C.F.R. §§ 103.215 and 103.225, and the Fifth Amendment's guarantee of a neutral decision-maker in federal adjudicative proceedings. That duty ran directly to Plaintiff as the named complainant and was mandatory at every stage.

**59**. **Breach — Original Investigation.** FHEO supervisory personnel breached their supervisory duty by: (a) permitting Kordich to conduct a 406-day investigation without issuing a single written notification of delay as required by 42 U.S.C. § 3610(a)(1)(C) — a breach recurring at every successive 100-day interval; (b) permitting Kordich to characterize Plaintiff's third-party discrimination complaint as "approach to liability" and foreclose independent investigation of documented 2019 nationality-based harassment prohibited under 42 U.S.C. § 3617; (c) permitting issuance of a determination premised on the material factual error that SOA receives no federal funding, directly contradicted by documentary evidence already in the investigative record; and (d) permitting issuance of a determination that failed to address the incompatibility of the deed restrictions with ORS 93.270(3), a state-law provision that expressly voids the restriction at issue, further compounding the factual deficiencies of the determination.

**60**. **Breach — Reconsideration**. The supervisory breach deepened during reconsideration when: (a) HUD assigned Kordich to participate in reconsideration of his own erroneous determination in direct violation of HUD's regulatory impartiality requirements under 24 C.F.R. §§ 103.215 and 103.225 and the Fifth Amendment's neutral decision-maker requirement; (b) Erik Heins declined to reassign Kordich despite Plaintiff's written conflict-of-interest objection, without identifying any regulatory basis for that refusal; (c) HUD's Office of General Counsel transferred the file among multiple attorneys — including Palmer Heenan,

39

Taylor Poe, and Stephon Woods — over four-plus years without producing any substantive determination; and (d) HUD attorney Taylor Poe represented on January 24, 2024 that Plaintiff would receive updates every few weeks, then allowed months to pass without contact;

61. **Breach — Communications Cutoff.** The supervisory breach culminated in the March 5, 2025, institutional directive cutting off all communication with Plaintiff while her reconsideration remained open and undecided. The passive construction of Palmer Heenan's email — "we have been directed" — establishes this as a supervisory directive. That directive violated HUD's mandatory obligations under 24 C.F.R. §§ 103.215 and 103.225, eliminated Plaintiff's ability to participate in the reconsideration HUD had invited, and was timed to coincide with the approaching administrative claim deadline such that Plaintiff's filing of civil suit would terminate HUD's administrative obligation under 42 U.S.C. § 3613(a)(2) without a determination ever having been issued.

62. **Constitutional Dimension.** The assignment of Kordich to review his own determination violated the Fifth Amendment's due process guarantee of a neutral decision-maker. The failure to investigate the third-party discrimination complaint, combined with the "leverage" characterization and manufactured limitations bar, deprived Plaintiff of equal enforcement of the federal civil rights law she invoked. These violations do not constitute standalone claims in this action. They define the standard of care HUD's supervisory personnel were required to meet. Under *Loumiet v. United States,* 828 F.3d 935, 942–44 (D.C. Cir. 2016), they independently place each supervisory breach outside the discretionary function exception.

63. **Discretionary Function Exception Inapplicable.** No supervisory conduct alleged in this Count is shielded by 28 U.S.C. § 2680(a). Issuing a communications cutoff while a mandatory proceeding remains open is institutional abandonment of non-discretionary duty.

None of this involves the kind of policy judgment *Berkovitz v. United States,* 486 U.S. 531 (1988), and *United States v. Gaubert,* 499 U.S. 315 (1991), require before the exception applies.

64. **Private Analogue.** A private investigation firm that assigns a conflicted reviewer to evaluate his own prior work, fails to honor client status representations, transfers a matter among personnel for four years without output, and unilaterally severs communication while the assigned task remains incomplete would face professional negligence liability under D.C. law. *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C. 1982). D.C. Rules of Professional Conduct 1.3, 1.4, and 1.7 define the applicable standard of care and are violated on these facts.

65. **Causation and Damages.** HUD's negligent supervision was a direct and proximate cause of Plaintiff's damages independent of Counts I through III. The structural conflicts in the reconsideration proceeding ensured it could not produce an impartial correction of the 2020 determination's factual errors regardless of the evidence Plaintiff submitted. Adequate supervision at any of the three phases described above would have resulted in a different determination, preserving Plaintiff's development opportunity, her enforcement posture under 42 U.S.C. § 3610(b), her election rights under § 3613, and the full range of remedial options that HUD's mandatory statutory framework was specifically designed to protect.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Persida Myers respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant United States of America as follows:

1. Compensatory damages in the total amount of $6,536,642, comprising: (a) $557,309 in property damage; (b) $5,479,333 in opportunity loss; and (c) $500,000 in emotional distress;

2. Post-judgment interest to the extent permitted by law;

3. Costs of suit pursuant to 28 U.S.C. § 2412;

41

**4.** Costs and expenses pursuant to 28 U.S.C. § 2412(a) and (d) to the extent Plaintiff is a prevailing party and the government's position was not substantially justified, including filing fees and other recoverable expenses; and, if Plaintiff retains counsel prior to judgment and prevails, Plaintiff requests reasonable attorney fees pursuant to 28 U.S.C. §§ 2678 and 2412(b) and (d) to the extent permitted by law; and

**5.** To the extent that opportunity losses continue to accrue between the date of this Complaint and the date of judgment — which they do, at the rate established in Exhibit L — leave to supplement the damages calculation pursuant to 28 U.S.C. § 2675(b). Section 2675(b) permits recovery in excess of the administrative claim amount upon a showing of newly discovered evidence not reasonably discoverable at the time of SF-95 presentment, or upon a showing of intervening facts arising after that presentment. The opportunity losses accruing between the date of SF-95 presentment (September 4, 2025) and the date of judgment constitute intervening facts within the meaning of § 2675(b), as they arise from the continuing passage of time during a period of HUD-caused property deprivation that was ongoing but not fully quantifiable at the time of presentment. The total damages through judgment are determinable by applying the accrual rate established in Exhibit L to the period between the SF-95 filing date and the date of judgment.

**6.** Such other and further relief as this Court deems just and proper.

Dated: March 23rd, 2026.

Respectfully submitted,

*/ s/ Persida Myers*
**PERSIDA MYERS,** *Pro Se*
11216 NW Blackhawk Dr. Portland, OR 97229
503.961.5007; Persida@sunriverfitness.com

**EXHIBIT LIST**

**Exhibit 1.**  Standard Form 95, filed September 4, 2025

**Exhibit 2.**  13-Page Basis of Claim letter, dated September 4, 2025, and **Exhibits A-L**

    **Exhibit A.**  FHA Complaint No. 10-19-1175-8, dated August 26, 2019

    **Exhibit B.**  Third Party Discrimination Complaint dated March 30, 2020

    **Exhibit C.**  HUD Determination of No Reasonable Cause, September 30, 2020

    **Exhibit D.**  Plaintiff's Request for Reconsideration, October 8, 2020

    **Exhibit E.**  HUD Letter of Abeyance reopening complaint, December 30, 2021

    **Exhibit F.**  Plaintiff's email response to HUD correcting the dates of third-party discrimination incidents to 2019, dated May 27, 2022

    **Exhibit G.**  Emails to OIG, USDOJ and FHCD, dated October 11, 2022

    **Exhibit H**.  ZOOM meeting participation, attended by HUD personnel, January 24, 2024

    **Exhibit I.**  Evidence of SOA federal financial assistance, January 24, 2024

    **Exhibit J.**  Email from HUD attorney Palmer Heenan, March 5, 2025

    **Exhibit K.**  Property maintenance expense records and deed ($557,309)

    **Exhibit L.**  Market study and opportunity loss calculations ($5,479,333)

**Exhibit 3.**  FOIA Request File no. 10-19-1175-8, March 22, 2026

## CERTIFICATION UNDER FED. R. CIV. P. 11

I certify that this Complaint is not presented for any improper purpose; is supported by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law; and the factual contentions herein have or are likely to have evidentiary support after a reasonable opportunity for investigation.

Respectfully submitted,

*/ s/ Persida Myers*
**PERSIDA MYERS,** *Pro Se*
11216 NW Blackhawk Dr. Portland, OR 97229
503.961.5007; Persida@sunriverfitness.com

44